```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION
```

TAMARRA SOWELL, as personal )
representative, administrator )
for the Estate, and on behalf )
of the heirs of ADEKUNLE ODUMABO,)
                              )
        Plaintiff,            )
                              )
        v.                    )    CASE NO. 2:09 cv 47
                              )
ROY DOMINGUEZ, individually and )
in his official capacity as   )
Sheriff of Lake County, Indiana; )
BENNIE FREEMAN, individually and )
in his official capacity as   )
warden of Lake County Jail;   )
SOUTHLAKE CENTER FOR MENTAL   )
HEALTH Southlake Center employees)
DR. LEE PERIOLATE and MANUEL  )
BARRAGAN; Lake County Jail    )
employees OFFICER JANICE HATTON, )
OFFICER LINDA RILEY, SERGEANT R. )
STARKEY, and SERGEANT HUBNER; and)
UNKNOWN EMPLOYEES AND SUPERVISORS)
OF LAKE COUNTY JAIL; AND      )
SOUTHLAKE CENTER FOR MENTAL   )
HEALTH,                       )
                              )
        Defendants            )

                          OPINION AND ORDER

This matter is before the court on the Motion to Compel Discovery [DE 59] filed by the plaintiff, Tamarra Sowell, as personal representative and administrator for the Estate, and on behalf of the heirs of Adekunle Odumabo, on May 12, 2010.  For the reasons set forth below, the motion is GRANTED.

## Background

The plaintiff, Tamarra Sowell, brought this action against the Sheriff of Lake County, the Warden of the Lake County Jail, Southlake Center for Mental Health, and various employees and supervisors of Lake County Jail and Southlake after Adekunle Odumabo hanged himself on April 30, 2007, while an inmate at the Lake County Jail. Sowell brought suit under 42 U.S.C. §1983 for violations of Odumabo's constitutional rights; the Indiana Wrongful Death Statute, Ind. Code §34-23-1-1; and Indiana's Personal Civil Liability Under Civil Rights Laws of Employee Acting Within Scope of Employment, Ind. Code §34-13-4-1. Sowell alleges that Odumabo died because the Lake County Jail staff knew Odumabo should be monitored as a suicide risk but failed to have him under suicide watch.

Prior to his death, Odumabo was in the custody of the Lake County Jail. On April 26, 2007, Odumabo appeared before Judge Paul R. Cherry in the United States District Court. During the proceedings, Odumabo repeatedly told the judge that he wanted to die. Judge Cherry ordered the Lake County Jail to place Odumabo on suicide watch, but Odumabo was taken off suicide watch one day after the hearing. On April 30, 2007, Odumabo hanged himself with a bed sheet from the ceiling of his cell.

Lake County is self-insured for liability claims through the Lake County Self-Insurance Fund, which is under the jurisdiction of the Lake County Commissioners. Lake County also contracted with Southlake, a company providing mental health services at the jail, to indemnify, defend, and hold harmless Southlake, and its directors, officers, employees, agents, and independent contractors for all claims arising out of care rendered at the Lake County Jail by Southlake employees.

On May 1, 2007, the Lake County Commissioners' Attorney, John Dull, retained Karas Adjusters, an insurance company, to assist in the investigation of the potential claims arising from Odumabo's suicide. On May 29, 2007, Manuel Barragan, a Southlake employee who worked at the jail at the time of Odumabo's incarceration, gave a statement to Ann Watkins, an agent of Karas Adjusters, regarding the circumstances of Odumabo's death. The statement was transcribed and forwarded to the attorneys for Lake County.

In the course of discovery, Sowell submitted a request to Barragan and Southlake seeking all documents relating to Odumabo. The defendants objected to the production of Barragan's statement taken by Karas Adjusters, contending that the statement is privileged under Indiana's insured-insurer privilege and is

attorney work product. Plaintiff now seeks to compel the defendants to produce Barragan's statement.

## Discussion

A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things." Federal Rule of Civil Procedure 26(b)(1). For discovery purposes, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Chavez v. DaimlerChrysler Corp., 206 F.R.D. 615, 619 (S.D. Ind. 2002)(quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)). Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard. Sanyo Laser Prods., Inc. v. Arista Records, Inc., 214 F.R.D. 496, 502 (S.D. Ind. 2003). See also Adams v. Target, 2001 WL 987853, *1 (S.D. Ind. July 30, 2001) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."); Shapo

4

v. Engle, 2001 WL 629303, *2 (N.D. Ill. May 25, 2001)("Discovery is a search for the truth.").

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Federal Rule of Civil Procedure 37(a)(2)-(4). The burden "rests upon the objecting party to show why a particular discovery request is improper." Gregg v. Local 305 IBEW, 2009 WL 1325103, *8 (N.D. Ind. May 13, 2009)(citing Kodish v. Oakbrook Terrace Fire Prot. Dist., 235 F.R.D. 447, 449-50 (N.D. Ill. 2006)); Carlson Restaurants Worldwide, Inc. v. Hammond Professional Cleaning Servs., 2009 WL 692224, *5 (N.D. Ind. March 12, 2009)(internal citations omitted). The objecting party must show with specificity that the request is improper. Cunningham v. Smithkline Beecham, 255 F.R.D. 474, 478 (N.D. Ind. 2009)(citing Graham v. Casey's General Stores, 206 F.R.D. 253, 254 (S.D. Ind. 2002)). That burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." Cunningham, 255 F.R.D. at 478 (citing Burkybile v. Mitsubishi Motors Corp., 2006 WL 2325506, *6 (N.D. Ill. Aug. 2, 2006))(internal quotations and citations omitted).

Rather, the court, under its broad discretion, considers "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court."  Berning v. UAW Local 2209, 242 F.R.D. 510, 512 (N.D. Ind. 2007) (examining Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002)) (internal quotations and citations omitted).

The sole issue of Sowell's motion to compel is whether the statement Barragan made to the agent of Karas Adjusters is precluded from discovery under Indiana's insurer-insured privilege or, in the alternative, as attorney work product.  As a general rule, evidentiary privileges are not favored and where recognized, must be narrowly construed.  Memorial Hospital for McHenry County v. Shadur, 664 F.2d 1058, 1061 (7th Cir. 1981). The party claiming the privilege carries the burden of demonstrating that the document falls within the privilege.  Allendale Mut. Ins. Co. v. Bull Data Systems, Inc., 152 F.R.D. 132, 137 (N.D. Ill. 1993).

Federal Rule of Evidence 501 provides that "the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the

light of reason and experience." When the basis of federal jurisdiction is diversity, the court applies the state law of privilege. Federal Rule of Evidence 501; Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co., 2005 WL 3690565, *4 (C.D. Ill. Jan. 31, 2005)(where the basis of federal jurisdiction is diversity, the court is to apply the state law of attorney client privilege); Lorenz v. Valley Forge Ins. Co., 815 F.2d 1095, 1097 (7th Cir. 1987)(applying the state law of privilege to a diversity claim in federal court). In cases where the principal claim in federal court arises under a federal law, with the information also relevant to pendent state claims, the federal common law of privileges apply. Memorial Hospital, 664 F.2d at 1061. See also Kodish, 235 F.R.D. at 450. The court determines the principal claim by asking whether state or federal law supplies the rule of decision. Memorial Hospital, 664 F.2d at 1061. Otherwise, it would be meaningless to hold the same information privileged for the state claims and not for the federal claims. Memorial Hospital, 664 F.2d at 1061 n.3.

Sowell's principal claim is brought pursuant to §1983 with allegations of constitutional violations. Because federal law supplies the rule of decision for this claim, federal common law rules of privilege govern this claim. Although Indiana law recognizes the insured-insurer privilege as an expansion of the

attorney-client privilege, federal courts have declined to expand the attorney-client privilege to encompass the insured-insurer privilege, nor does federal law recognize the insured-insurer privilege as a distinct privilege. Stout v. Illinois Farmers Ins. Co., 150 F.R.D. 594, 610 (S.D. Ind. 1993) ("Regarding insurance claims, to the extent that an attorney has acted as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the [attorney-client] privilege is not applicable."); Continental Cas. Co. v. Marsh, 2004 WL 42364, *2 (N.D. Ill. Jan. 6, 2004) ("The public policy issue behind this result is that insurance companies, which are in the business of reviewing, processing, and adjusting claims, should not be permitted to insulate the factual findings of a claims investigation by the involvement of an attorney to perform such work."). Therefore, Barragan's statement to the Karas Adjusters' agent is not privileged under federal law.

Considering, arguendo, that Indiana law governed the application of privilege, the insurer-insured privilege is inapplicable in light of the specific facts of this case. Indiana's insured-insurer privilege prevents disclosure of "statements from the insured to the insurer concerning an occurrence which may be made the basis of a claim by a third party where the insurance policy requires the insurer to defend claims against the in-

sured." Richey v. Chappell, 594 N.E.2d 443, 447 (Ind. 1992). This privilege is read narrowly. Memorial Hospital, 664 F.2d at 1061. For example, in Crisp v. I/N Tek, L.P., 2008 WL 222287, *4 (N.D. Ind. Jan. 25, 2008), the employer's insurance company sent a field representative to investigate the employee's accident. The court held the insurance company did not insure the employee, therefore the employee's statement to the field representative was not protected by the insured-insurer privilege. Crisp, 2008 WL 222287, at *4.

Barragan's relationship to Karas Adjusters is even more attenuated than the employee's relationship to the insurer in Crisp. Barragan was not insured by Karas Adjusters, in fact, none of the parties in this litigation were insured by Karas Adjusters. Lake County was self-insured for liability claims through the Lake County Self-Insurance Fund and had a contractual obligation to indemnify and defend Southlake, Barragan's employer. Karas Adjusters was hired only to investigate the claim. Because Karas Adjusters does not insure Barragan, he is not an insured within the meaning of Indiana's insured-insurer privilege, nor is Karas Adjusters an insurer of any of the parties involved. Therefore, if the court chose to recognize Indiana's insured-insurer privilege, Barragan's statement is beyond the scope of what the privilege seeks to exclude from discovery.

The defendants also assert that Barragan's statement is protected as attorney work product. "The work-product doctrine protects documents prepared by attorneys in anticipation of litigation for the purposes of analyzing and preparing a client's case." Sandra T.E. v. South Berwyn Sch. Dist. 100, 600 F.3d 612, 618 (7th Cir. 2009). See Federal Rule of Civil Procedure 26(b)(3). The work-product doctrine serves two purposes, protecting an attorney's thought processes and mental impressions and limiting the circumstances when "attorneys may piggyback on the fact-finding investigation of their more diligent counterparts." Sandra T.E., 600 F.3d at 622. "The mere fact that litigation does eventually ensue does not, by itself, cloak material prepared by an attorney with protection of the work product privilege." Blinks Mfg. Co. v. Nat'l Presto Indus., Inc., 709 F.2d 1109, 1118 (7th Cir. 1983). The threshold inquiry is whether the alleged protected document was prepared in anticipation of litigation. Blinks, 709 F.2d at 1118. "While much of the paperwork generated by insurance companies is prepared with an eye toward a possible legal dispute over a claim, it is important to distinguish between 'an investigative report developed in the ordinary course of business' as a precaution for the 'remote prospect of litigation' and materials prepared because 'some articulable claim, likely to lead to litigation . . . has

arisen.'" Logan v. Commercial Union Ins. Co., 96 F.3d 971, 977 (7th Cir. 1996) (quoting Blinks, 709 F.2d at 1120). Only documents prepared in the latter circumstances are protected work product. Sandra T.E., 600 F.3d at 622.

Here, Barragan's statement was taken approximately one month after Odumabo's death, 21 months before Sowell filed the lawsuit. The defendants have not provided any facts demonstrating that at the time Barragan's statement was taken there was an articulable claim, likely to lead to litigation. Furthermore, Barragan's statement was not taken by an attorney, and the defendants have not alleged that the statement contains an attorney's mental impressions or thought processes. Therefore, Barragan's statement was prepared as an investigative report, as a precaution, and is not protected work product.

_____

For the foregoing reasons, the Motion to Compel Discovery [DE 59] filed by the plaintiff, Tamarra Sowell, as personal representative and administrator for the Estate, and on behalf of the heirs of Adekunle Odumabo, on May 12, 2010, is GRANTED.

ENTERED this 1st day of December, 2010

                                        s/ Andrew P. Rodovich
                                          United States Magistrate Judge