# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| **TAMARRA SOWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:09 CV 47** |
| | ) | |
| **ROY DOMINGUEZ,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>OPINION AND ORDER</u>

Defendants Southlake Center for Mental Health, Dr. Lee Periolat, and Manual

Barragan (collectively referred to as the "Southlake defendants") have moved for

summary judgment in this case. (DE # 46.) Defendants Roy Dominguez, Bennie

Freeman, Officer Janice Hatton, Officer Linda Riley, Sergeant R. Starkey, Sergeant

Hubner, and unknown employees and supervisors of Lake County Jail[1] (collectively

referred to as the "Lake County Jail defendants") have also filed a motion for summary

judgment. (DE # 61.) The Lake County Jail defendants have moved to adopt by

reference two of the Southlake defendants' summary judgment arguments.

(DE # 61 at 3-4.) That motion will be **granted**. As explained below, plaintiff's claim for

indemnification will be **dismissed without prejudice** for lack of subject matter

jurisdiction. Regarding the remaining claims, the Southlake defendants' motion for

---

[1] The "unknown employees and supervisors of Lake County Jail" are listed as parties to the motion for summary judgment. (*See* DE # 51 at 1.) Until these parties have been identified or served process, they cannot be awarded summary judgment. *Cf. Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007). In any event, as this order will explain, these parties will be dismissed from the case.

summary judgment will be **denied in whole**. The Lake County Jail defendants' motion

will be **granted in part and denied in part**.

Also before the court is the Southlake defendants' motion to strike Exhibit B of

the plaintiff's Memorandum in Opposition to Summary Judgment. (DE # 53.) Exhibit B

appears to be a report of the investigation of Lake County Jail undertaken by the United

States Department of Justice. (Exh. to Pl.'s Resp. to Southlake Def.'s Br. in Supp. of

Summ. J. 3, DE # 50-2.) Because this matter can be resolved without considering Exhibit

B and addressing the evidentiary claims raised in the Southlake defendants' motion to

strike, that motion will be **denied as moot**.

## I.     BACKGROUND

### a.     *Factual background*

The facts discussed herein are either undisputed, or, when in dispute, resolved in

favor of the non-moving party, plaintiff Tamara Sowell ("Sowell"). *See Popovits v. Circuit

City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). Sowell filed a complaint as "personal

representative, Administrator for the Estate, and on behalf of the heirs of Adekunle

Odumabo" ("Odumabo") who is deceased. (Pl.'s First Am. Compl. ¶ 1, DE # 24.) The

complaint alleges that Odumabo appeared before Magistrate Judge Paul Cherry on

April 26, 2007, and threatened to take his own life. (*Id.*) Judge Cherry ordered Lake

County Jail to place Odumabo under a suicide watch. (*Id.*) Sowell alleges that

defendants ignored Judge Cherry's order and took Odumabo off suicide watch the next

day. (*Id.* at ¶ 5.) Odumabo ended his own life while at Lake County Jail on

April 30, 2007. (*Id.* ¶ 7.) Sowell alleges that by failing to keep Odumabo under suicide watch, defendants were deliberately indifferent to the risk that Odumabo would die in jail. (*Id.* ¶ 15.)

Sowell filed her original complaint in this court on March 3, 2009. (DE # 1.) In her First Amended Complaint, filed on April 29, 2009, Sowell stated that she "is the personal representative and administrator for the Estate of Adekunle Odumabo." (Pl.'s First Am. Compl. ¶ 8.) Sowell is also the mother of Odumabo's son. (*Id.*) The parties agree that Sowell first petitioned the Circuit Court of Cook County to become the administrator of Odumabo's estate on February 9, 2009, and that her appointment was finalized on July 15, 2009. (Pl.'s Resp. to Southlake Defs.' Mot. for Summ. J. 2-3, DE # 50; Southlake Defs.' Br. in Supp. of Mot. for Summ. J. 3, DE # 47; Lake County Jail Defs.' Br. in Supp. of Mot. for Summ. J. 5, DE # 62.) Exhibits to the parties' briefs show that many hearings in the Illinois courts took place in between these two dates. (Joseph A. Namikas Aff., Ex. A to Pl.'s Resp. to Southlake Defs. Mot. for Summ. J., DE # 50-2; Ex. 1 to Southlake Defs.' Br. in Supp. of Mot. for Summ. J. and to Lake County Jail Defs.' Br. in Supp. of Mot. for Summ. J., DE # 46-2.)

What follows is an overview of the administrator proceedings in the Illinois state courts. On February 9, 2009, Sowell filed a Petition for Letters of Administration in the Circuit Court of Cook County seeking her appointment as the independent administrator of Odumabo's Estate. (Namikas Aff. ¶ 4.) The presentation of Sowell's Petition for Letter of Administration was scheduled to occur on March 4, 2009.

(*Id.* at ¶ 5.) On that date, the matter was heard and then continued for hearing before a different judge, Judge James A. Kennedy, to April 6, 2009. (*Id.*) Judge Kennedy, on his own motion, continued the hearing to April 13, 2009, for a presentation of an affidavit of heirship, and the affidavit was presented on that date. (*Id.* at ¶¶ 6, 7.) Judge Kennedy then continued the matter to May 11, 2009, in order to determine whether it was necessary to undertake a separate guardianship for Sowell's and Odumabo's son, the sole heir of Odumabo's estate. (*Id.* at ¶ 7.)

On May 11, 2009, Sowell's counsel presented the minor's birth certificate listing Sowell as his mother and asserted that it was not necessary to appoint her as the minor's guardian. (Namikas Aff. ¶ 8.) Judge Kennedy found this evidence compelling but still determined that it was necessary under the laws of Illinois for Sowell to be formally appointed as the guardian of the estate of her minor son. (*Id.*) Because Sowell and her son were residents of Will County, the matter was continued so that Sowell could be appointed as guardian of her son's estate in the court for that county. (*Id.* at ¶ 9.) That process was completed on July 6, 2009. (*Id.* at ¶ 10.) The letters of office signifying Sowell's appointment as guardian were also issued that day but were forwarded to her counsel four days later. (*Id.* at ¶ 10-11.) On July 15, 2009, Sowell's counsel presented the letters of office to Judge Kennedy and the latter entered an order appointing Sowell as the independent administrator of the Estate of Odumabo. (*Id.* at ¶ 11.) Based on this account of the proceedings, Sowell asserts that the delay in

finalizing her appointment occurred through no fault or delay of her counsel. (Pl.'s Resp. to Southlake Defs.' Br. in Supp. of Summ. J. 3.)

b.      *Legal background*

Sowell filed a complaint stating claims of violation of constitutional rights under 42 U.S.C. § 1983, wrongful death, and indemnification. (DE # 24 at 5-7.) As stated above, two groups of defendants have filed motions for summary judgment requesting summary judgment in their favor.

The Southlake defendants' and the Lake County Jail defendants'[2] primary argument is that Sowell's complaint should be dismissed because Sowell had not been appointed personal representative or administrator of Odumabo's estate by the Illinois courts at the time the complaint initiating the present action was filed or at any time prior to two years after the date of Odumabo's death. (Southlake Defs.' Br. in Supp. of Mot. for Summ. J. 4; Lake County Jail Defs.' Br. in Supp. of Mot. for Summ. J. 7.) Defendants argue that under Indiana law, suits for wrongful death need to be brought by the personal representative of the deceased within two years of the death. (Southlake Defs.' Br. in Supp. of Mot. for Summ. J. 5.) Defendants assert that the personal representative is the only person with "standing to bring any claim on behalf of the

---

[2] As mentioned above, the Lake County Jail defendants have moved to adopt by reference the Southlake defendants' arguments related to Sowell's status as personal representative of Odumabo's estate and her claim of indemnification. (Lake County Jail Defs.' Br. in Supp. of Mot. for Summ. J. 3-4.) In responding to the Lake County Jail defendants' motion for summary judgment, Sowell incorporates by reference the relevant portions of her response to the Southlake defendants' motion. (Pl.'s Resp. to Lake County Jail Defs.' Mot. for Summ. J. 2, DE # 65.)

estate" of a deceased person. (*Id.*) Since Sowell was not appointed the personal representative within two years of Odumabo's death, defendants argue that her claim for wrongful death should be dismissed under Indiana law. (*Id.* at 7.) They argue that federal relation back principles cannot serve to allow Sowell to have her status as personal representative, obtained after the mandated two-year time period, relate back to the date of the filing of the original complaint. (Southlake Defs.' Reply 7, DE # 66.) Defendants further argue that the Indiana law described above applies to Sowell's federal claim as well, subjecting that claim to summary judgment. (*Id.* at 7-8.)

In response, Sowell argues that for both her state and federal claims, federal relation back principles allow for her status as personal representative to relate back to the date of the filing of her original complaint. (Pl.'s Resp. to Southlake Defs.' Mot. for Summ. J. 6; Pl.'s Resp. to Lake County Jail Defs.' Mot. for Summ. J. 3.) She also argues that while defendants state that she does not have standing to sue, their argument is actually that she has a lack of capacity to sue. (Pl.'s Resp. to Southlake Defs.' Mot. for Summ. J. 5.) Sowell argues that all defendants have waived the defense of lack of capacity to sue because they did not assert this affirmative defense in their answers to her First Amended Complaint. (*Id.* at 5; Pl.'s Resp. to Lake County Jail Defs.' Mot. for Summ. J. 2.)

In reply, the Southlake defendants argue that they properly pleaded their affirmative defense by asserting the defense of "plaintiff's lack of standing to pursue the claims." (Southlake Defs.' Reply 3, DE # 52.) Further, they argue that lack of standing,

rather than lack of capacity, is the appropriate defense. (*Id.*) They assert that "lack of capacity" refers to a legal disability such as infancy or incompetency, not to the legal existence of a plaintiff. (*Id.* at 4.)

The Lake County Jail defendants argue that they preserved all defenses relevant to their summary judgment motion. (Lake County Jail Defs.' Reply 2, DE # 66.) They also argue that Sowell misrepresented to the parties and to the court that she was the personal representative and administrator of Odumabo's estate when she had not yet been so appointed. (*Id.* at 2-3; Lake County Jail Defs.' Br. in Supp. of Mot. for Summ. J. 7-8.) They argue that she should not be rewarded for misrepresenting her capacity in her complaint. (Lake County Jail Defs.' Reply 3.)

Defendants make several other arguments in favor of summary judgment. Both groups of defendants argue, for separate reasons as discussed below, that Sowell's claim of indemnification fails. (*Id.* at 10.) The Southlake defendants argue that the state law claims against them are barred by the Indiana Medical Malpractice Act. (Southlake Defs.' Br. in Supp. of Summ. J. 9.) The Lake County Jail defendants argue that the state law claims against them fail because Sowell failed to comply with the notice requirements of Indiana's Tort Claims Act.

## II.     STANDARD OF REVIEW

Subject matter jurisdiction over this case in this court is based on federal question jurisdiction for the Section 1983 claim and on supplemental jurisdiction for the state law claims. (Pl.'s Am. Compl. 2.) Under the rule developed in *Erie R.R. v. Tompkins*,

304 U.S. 64, (1938), a federal court with supplemental jurisdiction over state law claims must apply substantive state law in the absence of any countervailing federal policies. *See Hanna v. Plumer,* 380 U.S. 460, 473 (1965); *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966). Thus, in this case, federal law provides the procedural law for the entire case and the substantive law for the Section 1983 claim, while state law provides the substantive law for the Wrongful Death Act and indemnification claims. Both parties rely on Indiana's law for the Wrongful Death Act and indemnification claims. Thus, because the parties seem to agree that the substantive law of the forum state, Indiana, applies and no party points out significant differences between Indiana and Illinois law, the court will apply Indiana law to the substance of the Wrongful Death Act and indemnification claims. *Gould v. Artisoft, Inc.,* 1 F.3d 544, 549 n. 7 (7th Cir. 1993); *Kochert v. Adagen Med. Int'l, Inc.,* 491 F.3d 674, 677 (7th Cir. 2007).

Under federal law, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" those materials listed in RULE 56(c) which "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the non-moving party cannot establish an essential element of its claim, RULE 56(c) requires

entry of summary judgment for that claim. *Massey v. Johnson*, 457 F.3d 711, 716

(7th Cir. 2006) (citing *Celotex*, 477 U.S. at 322-23).

Once the moving party has met its burden, to successfully prevent summary

judgment the nonmovant must present "specific facts demonstrating that there is a

genuine issue for trial." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677

(7th Cir. 2008). In doing so, "the nonmoving party bears the responsibility of identifying

the evidence upon which he relies." *Harney v. Speedway SuperAmerica, LLC*,

526 F.3d 1099, 1104 (7th Cir. 2008). When considering a motion for summary judgment,

the court views the record and makes all reasonable inferences in a light most favorable

to the nonmovant. *Popovits*, 185 F.3d at 731.

## III.    ANALYSIS

> a.    *Sowell's ability to bring a claim under the Wrongful Death Act and Section 1983*

Much of the parties' briefing focuses on whether Sowell's Wrongful Death Act

and Section 1983 claims are barred because she was not appointed Odumabo's personal

representative before April 30, 2009, the date two years after Odumabo's death.

First, defendants argue that Sowell's Wrongful Death Act claim is barred by her

failure to be appointed Odumabo's personal representative within two years of his

death. (Southlake Defs.' Br. in Supp. of Summ. J. 7.) Indiana's Wrongful Death Act

states:

> When the death of one is caused by the wrongful act or omission of another,
> the personal representative of the former may maintain an action therefor
> against the latter, if the former might have maintained an action had he or

she, as the case may be, lived, against the latter for an injury for the same act or omission. *When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the personal representative of the decedent within two (2) years . . . .*

IND. CODE § 34-23-1-1 (2010) (emphasis added). The Supreme Court of Indiana has held that "[c]ase law has consistently interpreted the statute to mean that only a personal representative appointed within two years of the decedent's death may file the action." *Goleski v. Fritz*, 768 N.E.2d 889, 890-91 (Ind. 2002) (citing *Gen. Motors Corp. v. Arnett*, 418 N.E.2d 546, 548 (Ind. Ct. App. 1981)). In *Goleski*, the Supreme Court of Indiana found that because no one had been appointed as the decedent's personal representative within two years of his death, "there [could] be no action under the Wrongful Death Act." *Goleski*, 768 N.E.2d at 890-91. Indiana courts have long held that this requirement is "not a statute of limitations but a condition precedent to the existence of the claim." *Hosler v. Caterpillar, Inc.*, 710 N.E.2d 193, 197 (Ind. Ct. App. 1999); *Southerland v. Hammond*, 693 N.E.2d 74, 76-77 (Ind. Ct. App. 1998). Indiana courts have determined that because these requirements are conditions attached to the right to sue, the wrongful death statute is not subject to tolling. *Id.* at 77.

Federal courts have interpreted the requirements of the Indiana Wrongful Death Act to be issues of substantive law that are applied by federal courts. *See e.g., Estate of Sullivan v. United States*, 777 F. Supp. 695, 699 (N.D. Ind. 1991). Federal courts have interpreted both the Act and *Goleski* to mean that "the appointment of a personal representative within two years of a decedent's death is a statutory condition precedent

to a wrongful death action and cannot be remedied by a belated appointment even if the suit was commenced prior to the expiration of the two year period." *In re Rezulin Prods. Liab. Litig.*, No. 00-Civ.-2843, 2005 WL 383704, at *1 (S.D.N.Y. Feb. 16, 2005) (unpublished) (citing *Goleski*, 768 N.E.2d at 890-91). *See also Alvarez v. CSX Corp., Inc.*, No. 2:10-cv-80, 2010 WL 2803089, at *5 (N.D. Ind. July 14, 2010) (unpublished); *Ryan v. Phillip Morris USA, Inc.,* No. 1:05-cv-162, 2007 WL 270119, at *2 (N.D. Ind. Jan. 26, 2007) (unpublished); *Daniels v. USS Agri-Chemicals II*, No. 87-C-1836, 1990 WL 133230, at *2 (N.D. Ill. Sept. 11, 1990) (unpublished) (stating that the Indiana Wrongful Death Act "has two conditions precedent to filing suit: (1) the court must name a personal representative of the decedent's estate within two years of his or her death, and (2) the personal representative must file suit under the Indiana Act within two years"); *Daniels v. USS Agri-Chemicals I*, No. 87-C-1836, 1989 WL 69277, at *1 (N.D. Ill. June 16, 1989) (unpublished). *Cf. Estate of Thorton v. SeaQuest*, 48 F. Supp. 2d 841, 843 (N.D. Ind. 1999); *Estate of Sullivan,* 777 F. Supp. at 699. Courts have emphasized that these requirements are not "statute of limitations provisions, but are conditions precedent – substantive provisions – necessary for the existence of the action." *Daniels I*, 1990 WL 133230, at *2.

Second, the defendants argue that Sowell's claim under 42 U.S.C. § 1983 for violation of Odumabo's constitutional rights[3] fails because this claim was barred by

---

[3] The plaintiffs in the caption of the complaint are "Tamarra Sowell, as personal representative, administrator for the Estate, and on behalf of the heirs of Adekunle Odumabo." (Pl.'s Am. Compl. 1.) Although the caption says "heir," the complaint only discusses a singular heir, Sowell's son. Although the complaint states that the heir has suffered damages, in neither Sowell's complaint nor her responses to the motions for

state law since she was not Odumabo's personal representative within two years of his death and state law provides for the statute of limitations and for who can bring a survival action for a Section 1983 claim. (Southlake Defs.' Br. in Supp. of Mot. for Summ. J. 7; Lake County Jail Defs.' Mot. for Summ. J. 9.) Defendants are correct that because Section 1983 does not have a statute of limitations, the court uses Indiana's two-year statute of limitations for personal injury suits. *See* IND. CODE § 34-11-2-4 (2010); *Malone v. Corr. Corp of Am.*, 553 F.3d 540, 542 (7th Cir. 2009) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). Defendants are also correct that Section 1983 is silent on the mechanism by which a person's constitutional claims can survive his death, that is who can bring the claim after his death.

However, it is not clear that state law governs the mechanism by which a Section 1983 claim survives in Indiana. Pursuant to 42 U.S.C. § 1988, the court must look to see if analogous state law provides a mechanism by which an action for personal injury can survive a person's death and is "consistent with the meaning and purpose of constitutional and federal statutory law." *Bass v. Wallenstein*, 769 F.2d 1173, 1188 (7th Cir. 1985). If state law is inconsistent with the purposes of Section 1983, the state law must be disregarded in favor of federal common law. *Id.* Federal courts sitting in Indiana have held that neither Indiana's Wrongful Death Act nor its Survival Statute would provide for the survival of Section 1983 claims in situations like Sowell's. *Tracy v.*

---

summary judgment is there any identification or discussion of what claim is being asserted directly by the heir.

*Bittles,* 820 F. Supp. 396, 404 (N.D. Ind. 1993). *Cf. White v. Gerardot,* No. 1:05-cv-382, 2008

WL 534812, at *4 (N.D. Ind. Feb. 25, 2008) ("The precise interface between § 1983 and the

Indiana Wrongful Death Statute, however, remains somewhat uncertain . . ..."). Federal

courts sitting in Indiana have found that when a Section 1983 claim does not survive

under state law, it can survive under federal law pursuant to Section 1988.[4] *Tracy,*

820 F. Supp. at 404. *See also Bell v. City of Milwaukee,* 746 F.2d 1205, 1239-40

(7th Cir. 1984), *overruled on other grounds by Russ v. Watts,* 414 F.3d 783 (7th Cir. 2005).

Although the claim survives under federal law, to do so it appears that it still

needs to be brought by a personal representative. *See Montgomery v. Vill. of Lake Station,*

No. 2:02-cv-209, 2006 WL 2457238, at *11 (N.D. Ind. Aug. 22, 2006) (unpublished)

(noting that while a Section 1983 claims cannot be brought under Indiana's wrongful

---

[4] A claim under the Survival Statute is a claim for damages sustained during the decedent's lifetime. IND. CODE § 34-9-3-1 (2010). The Wrongful Death Act creates a "new and separate claim or cause of action for the damages sustained by decedent's estate as a result of his death." *Tracy v. Bittles,* 820 F. Supp. 396, 404 (N.D. Ind. 1993). In *Tracy,* the district court held that Section 1983 claims were more appropriately brought under the Survival Statute as they asserted claims for personal injury to the decedent, not injury to the estate. *Id.* 400-02. The court then acknowledged that in situations in which the decedent died from the injuries that comprised the Section 1983 violation, the Survival Statute was problematic because it prevented a personal representative from filing a claim for personal injuries to a decedent if the decedent died from those personal injuries. IND. CODE § 34-9-3-4 (2010). The court concluded that because the state laws of survivorship would bar the Section 1983 claim, they were inconsistent with two of the policies behind Section 1983, personal compensation and prevention of the abuse of power by people acting under color of state law. *Tracy,* 820 F. Supp. at 403-04. Therefore, the court concluded that pursuant to Section 1988, a Section 1983 claim could be brought in the name of a decedent's personal representative even if the decedent died from the personal injuries at issue. *Tracy,* 820 F. Supp. at 404.

13

death act, it can be brought by a personal representative). The defendants argue that Sowell's Section 1983 claim is barred because she was not appointed Odumabo's personal representative within two years of his death. (Southlake Defs.' Br. in Supp. of Summ. J. 9.) Thus, both the Wrongful Death Act and Section 1983 claims must have been brought by Odumabo's personal representative prior to April 30, 2009.

Sowell's response is that defendants waived their right to challenge her status to bring the suit because they did not assert this affirmative defense in their answers to her complaint. (Pl.'s Resp. to Southlake Defs.' Mot. for Summ. J. 5.) Sowell's argument that defendants waived their right to challenge her status to bring the suit (regardless of whether it is properly labeled a lack of standing or a lack of capacity) has been rejected by Indiana courts. The right to bring a wrongful death suit is statutory, thus the act's provision that a suit must be brought by a personal representative within two years of the death is "considered a condition attached to the right to sue and is not merely a statute of limitation. . . . As such it cannot be construed as a defense to an action which a defendant may interpose or waive, but it is a condition of the statute imposing liability." *Bocek v. Inter-Insurance Exch. of Chi. Motor Club*, 369 N.E.2d 1093, 1097 (Ind. Ct. App. 1977). Therefore, defendants have not waived their defense that Sowell could not sue because she was not the personal representative within two years.

The court concludes that Sowell was effectively Odumabo's personal representative within two years of his death as a matter of Illinois law. Sowell was appointed the administrator of Odumabo's estate in Illinois. Under Illinois law, once

14

letters of administration are issued for a decedent's estate, they relate back to the date of

the decedent's death. *Bonvolanta v. Delnor Cmty. Hosp.*, 413 F. Supp. 2d 906, 910

(N.D. Ill. 2005). All acts that the administrator took since the date of the death that were

within the scope of the administrator role and beneficial to the estate are validated.

*Ashmore v. Newman*, 350 Ill. 64, 81 (Ill. 1932) ("The probate or letters testamentary, when

granted, relate back to the date of the testator's death and validate acts done by an

executor before his appointment."); *Phelps v. Elgin, J. & E. Ry. Co.*,

184 N.E.2d 799, 800-801 (Ill. App. Ct. 1962); *cf. Nagel v. Inman*, 931 N.E.2d 1264, 1269 (Ill.

App. Ct. 2010) ("Our cases make clear that the appointment of an administrator *itself*

relates back to the time of the original pleading.") (emphasis in original).[5]

   Indiana courts will recognize suits brought by foreign personal representatives

within two years of a decedent's death without requiring that the personal

representative become appointed as such in Indiana. *Blusy v. Rugh,* 476 N.E.2d 874, 877

(Ind. Ct. App. 1985). The full faith and credit statute, 28 U.S.C. § 1738, "requires the

courts of one state to give to the 'judicial proceedings' of any court of any other state

'the same full faith and credit' that those proceedings would have in the rendering

state." *Daniels v. USS Agri-Chemicals III,* 965 F.2d 376, 382 (7th Cir. 1992). Thus, Sowell's

claim under the Wrongful Death Act survives because she was Odumabo's personal

---

   [5] The court notes that like Indiana courts, Illinois courts view bringing a lawsuit
within the proper time frame and being the personal representative as conditions
precedent to the right to bring claims under its Wrongful Death Act. *See Redmond v.
Cent. Cmty. Hosp.*, 382 N.E.2d 95, 100 (Ill. App. Ct. 1978).

representative in Illinois since the time of his death. Accordingly, as a matter of Illinois

law, Sowell was Odumabo's personal representative within two years of his death, and

Indiana substantive law requires recognition of that because of the full faith and credit

statute. Therefore Sowell's Wrongful Death Act claim is not barred for being untimely.

Because the parties have dedicated much time to this issue, the court will briefly

address whether INDIANA TRIAL RULES 15(C) or 17(A) or the substantially similar

FEDERAL RULES OF CIVIL PROCEDURE 15(c)[6] or17(a)[7] could be used to allow Sowell to

have her current status as personal representative relate back to the date of her original

complaint for her Wrongful Death Act and Section 1983 claims. First, it is clear that

INDIANA TRIAL RULES 15(C) and 17(A), as construed by Indiana courts, would not allow

_____

[6] FEDERAL RULE OF CIVIL PROCEDURE 15(c)(1)(C) provides that an amendment to a pleading changing the name of the party against whom the claim is asserted relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading" and the party to be brought in by the amendment "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Although the language of this rule addresses adding defendants, the Seventh Circuit has held that it also applies to changing the plaintiffs in a case. *See Staren v. Am. Nat'l Bank & Trust Co. of Chi.*, 529 F.2d 1257, 1263 (7th Cir. 1976)

[7] RULE 17(a)(3) provides that:

The court *may not* dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution the action proceeds as if it had been originally commenced by the real party in interest.

for her status as personal representative to relate back for her Wrongful Death Act claim. *See Hosler*, 710 N.E.2d at 196-98 (finding that the decedent's wife could not bring a wrongful death claim when she filed her complaint within the two-year time period and was appointed his personal representative four months after the two-year time period ended); *Honda Motor Co., Ltd. v. Parks*, 485 N.E.2d 644, 647 n. 2 (Ind. Ct. App. 1985) ("It is clear under Indiana Law, T.R.15(C) may not be utilized to substitute a qualified plaintiff in a wrongful death case for an unqualified one after the expiration of two years."). Indiana courts have reasoned that RULE 15(C) doesn't apply because it is not the complaint that is being amended, but "[the party's] legal status which was altered." *Hosler,* 710 N.E.2d at 196 (quoting *Arnett*, 418 N.E.2d at 548). *See also Honda Motor Co., Ltd. v. Parks*, 485 N.E.2d 644, 647 n. 2 (Ind. App. Ct. 1985). Indiana courts have also held the appointment of a personal representative within two years of a death is an issue of substantive law which controls over the "procedural liberality" of RULE 17.[8] *Arnett*, 418 N.E.2d at 549.

Second, whether or not the FEDERAL RULES OF CIVIL PROCEDURE can be used to save a wrongful death act claim in which a personal representative was not appointed within two years of the decedent's death is an unresolved matter. In *Daniels III,* the

---

[8] In a dissenting opinion, Judge Cudahy of the Seventh Circuit pointed out the rigidity of Indiana's approach to the application of RULES 15(C) and 17(A) to Wrongful Death Actions. *Gonzalez v. Volvo of Am. Corp.*, 752 F.2d 295, 299 (7th Cir. 1985). Judge Cudahy stated that the federal rules "deal quite sensibly and flexibly" with the issue of appointment of a personal representative after the expiration of the time period and that the Indiana rules "appear to be hypertechnical and inflexible." *Id.* at 302.

Seventh Circuit stated that "the applicability of Rule 15(c)" to a similar set of facts was "an interesting question," but it did not answer the question because it resolved the case on other grounds. 965 F.2d at 380. Thus, this court will also not reach that question.

Third, Sowell's Section 1983 claims would be allowed under FEDERAL RULES OF CIVIL PROCEDURE 15(c) and 17(a). Defendants agree that the FEDERAL RULES OF CIVIL PROCEDURE govern relation back in federal question matters. (*See* Lake County Jail Defs.' Reply 8.) But they argue that state law governs "whether the substance of the amendment can be related back and toll the statute of limitations" and thus that Indiana state law bars the Section 1983 claim.[9] (*Id.*) The court finds that state law applies only in so far as it would require equitable tolling. *See Moore v. Indiana,* 999 F.2d 1125, 1130 (7th Cir. 1993) ("In a federal-question case borrowing a state statute of limitations, federal law provides the requirements for the relation back of an amendment, while state law determines the more basic question of whether the substance of the amendment *mandates that it relate back in order to avoid the applicable statute of limitations*.") (emphasis added). Consistent with the principles conveyed in Section 1988, state law statutes of limitations should not be applied to frustrate the purposes of Section 1983. *Cf. Wilson v. Garcia*, 471 U.S. 261, 279, (1985) (deciding that state personal injury statutes

---

[9] The Lake County Jail defendants also argue that RULE 15(c)(1)(A) mandates that amendments only relate back if "the law that provides the applicable statute of limitations allows relation back." (*See* Lake County Jail Defs.' Reply 8.) However, plaintiffs, like Sowell, proceeding under RULE 15(c)(1)(C) need only meet the requirements of RULE 15(c)(1)(B), not those of RULE 15(c)(1)(A).

of limitations should be applied to Section 1983 claims because that would "minimize[ ] the risk that the choice of a state statute of limitations would not fairly serve the federal interests vindicated by § 1983").

Thus the FEDERAL RULES OF CIVIL PROCEDURE would apply to Sowell's Section 1983 claims. Amendments under RULE 15(c), should be "freely allowed." *Staren*, 529 F.2d at 1263. The "critical element involved in Rule 15(c) determinations" is notice. *Id.* In this case, defendants had notice of Sowell's claims and the allegations underlying them within two years of Odumabo's death. Sowell's status as personal representative "is merely formal and in no way alters the known facts and issues on which" this action is based." *Id.* Amended complaints have been freely allowed in these types of circumstances. *Id.*

Further, FEDERAL RULE OF CIVIL PROCEDURE 17(a)(3) provides for the case to proceed as though Sowell had originally filed the suit as Odumabo's personal representative. RULE 17(a)(3) states:

> The court *may not* dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

(emphasis added). This rule is not permissive – a court "may not" dismiss an action for failing to name the real party in interest" if the real party is substituted within a reasonable amount of time. Sowell was appointed the personal

representative, and therefore the real party in interest, within five months of the filing of her complaint and four months of the expiration of the two-year time period. She began the process of becoming the personal representative almost three months prior to the expiration of the two-year time period. Thus her delay in becoming the personal representative was reasonable.

In sum, Sowell can bring her Wrongful Death Act and Section 1983 claims because, as a matter of substantive Illinois law to which Indiana must give full faith and credit, she was Odumabo's personal representative within two years of his death. Even if this were not the case, the FEDERAL RULES OF CIVIL PROCEDURE would allow her status as personal representative to relate back to the filing of her original complaint for her Section 1983. Thus, Sowell's Wrongful Death Act and Section 1983 claims are not barred as untimely.

b.     *The Southlake defendants' status as healthcare providers*

The Southlake defendants argue that pursuant to the Indiana Medical Malpractice Act ("the Malpractice Act") claims for damages for wrongful death cannot be brought against them because they are qualified healthcare providers. (Southlake Defs.' Br. in Supp. of Mot. for Summ. J. 9.) Sowell counters that the Malpractice Act does not apply to her case because she has stated claims of deliberate and willful action, namely deliberate indifference, and not claims of medical malpractice, negligence, or gross negligence. (Pl.'s Resp to Southlake

Defs.' Mot. for Summ. J. 11-12.) The Southlake defendants "admit that allegations of deliberate actions may not fall under the Medical Malpractice Act." (Southlake Defs.' Reply 8.) They argue that Sowell's claims against them as pleaded in her amended complaint appear to be claims of negligence, but they acknowledge that some of her allegations of willful conduct may apply to them. (*Id.* at 7-8.)

Under the Malpractice Act, for a trial court to have subject matter jurisdiction over a medical malpractice action, the action first must be brought before a medical review panel and that panel must render an opinion. IND. CODE § 34-18-8-4 (2010), *H.D. v. BHC Meadows Hosp., Inc.*, 884 N.E.2d 849, 853 (Ind. Ct. App. 2008). The Malpractice Act defines medical malpractice as "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." IND. CODE § 34-18-2-18 (2010). The Act states that a tort is "a legal wrong, breach of duty, or negligent or unlawful act or omission proximately causing injury or damage to another." IND. CODE § 34-18-2-28 (2010).

The Malpractice Act itself does not "specifically exclude intentional torts from the definition of malpractice." *Doe by Roe v. Madison Ctr. Hosp.*, 652 N.E.2d 101, 104 (Ind. Ct. App. 1995) (citing *Van Sice v. Sentany*, 595 N.E.2d 264, 266 (Ind. Ct. App. 1992)). Indeed, one district court has observed that the Indiana state courts have "not drawn sharp lines" in their interpretation of the Malpractice Act and as such, have declined, "to define the coverage of the

Medical Malpractice Act in terms of covered unintentional torts and excluded intentional torts." *Guyant v. Johnson & Johnson, Inc.*, No. 1:03-CV-0015-DFH, 2003 WL 1921819, at *4 (S.D. Ind. Apr. 21, 2003) (unpublished).

Indiana courts construe the Malpractice Act to cover "curative or salutary conduct of a health care provider acting within his or her professional capacity" and have stated that the act excludes conduct "unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment." *Collins v. Thakkar*, 552 N.E.2d 507, 510 (Ind. Ct. App. 1990). To determine whether the Act is applicable, the court must look to the substance of a claim. *Van Sice,* 595 N.E.2d at 266. Indiana appellate courts have repeatedly held that regardless of how they are labeled by a plaintiff, claims that boil down to a "question of whether a given course of treatment was medically proper and within the appropriate standard" are the "quintessence of a malpractice case". *Van Sice*, 595 N.E.2d at 267 (plaintiff's claims of fraud and battery fell within the ambit of the Malpractice Act because the first was essentially a claim that the defendant failed to adhere to a standard of care and the second was a claim that the defendant did not get the plaintiff's informed consent for a procedure); *Popovich v. Danielson*, 896 N.E.2d 1196, 1202-04 (Ind. Ct. App. 2008) (finding that plaintiff's claims of assault and battery, fraud, breach of contract, and defamation all involved defendant's exercise of his professional judgment and involved

actions taken while providing medical care and thus the requirements of the Act applied to all of the claims).

To avoid application of the Malpractice Act, a plaintiff needs to prove that a qualified health care provider's actions were unrelated to the promotion of the plaintiff's health or an exercise of the provider's professional expertise, skill, or judgment. *Kuester v. Inman*, 758 N.E.2d 96, 102 (Ind. Ct. App. 2001); *Thakkar*, 552 N.E.2d at 510 (finding that the act didn't apply in cases where the conduct involved was "unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill or judgment"). One Indiana court found that wanton and gratuitous behavior, such as the intentional performance of an un-consented-to abortion do not fall within the Act's purview. *Id.*

The Seventh Circuit has stated that "deliberate indifference is not medical malpractice." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (2008). District courts within the Seventh Circuit have also held that the Malpractice Act also does not strip a federal court of subject matter jurisdiction over a Section 1983 claim based on deliberate indifference. *Henderson v. Fries*, No. 1:09-cv-268, 2010 WL 3039205, at *2 (Aug. 3, 2010) (unpublished); *Estate of Norris ex rel. Gambrel v. Putnam County Sheriff*, IP-01-0509-C-B/S, 2002 WL 472302, at *6 (Mar. 23, 2002) (unpublished) (dismissing plaintiffs' negligence claims for failure to comply with the Indiana Medical Malpractice Act, but ruling that their section 1983 claims based on deliberate indifference survived defendants' motion to dismiss).

In her complaint, Sowell states that the Southlake Medical Center and the individual Southlake defendants, Dr. Lee Periolat and Manuel Barragan breached their "duty to Mr. Odumabo by failing to provide the evaluation, care, and treatment to him that could have prevented his death in the Jail." (DE # 24 at ¶¶ 11, 12.) These allegations state claims of negligence which Sowell admits are the "kinds of claims that come under the ambit of the Malpractice Act." (Pl.'s Resp. to Southlake Defs.' Mot. for Summ. J. 12.) However, Sowell also claims that the defendants' actions and omissions at issue "were undertaken intentionally and with willful indifference to Mr. Odumabo's rights." (Pl.'s Am. Compl. ¶ 27.) As the Southlake defendants point out, the amended complaint does not specify which defendants Sowell intended this allegation to apply. However, in her summary judgment motion, Sowell indicates that these allegations apply to the Southlake defendants. (Pl.'s Resp. to Southlake Defs.' Mot. for Summ. J. 12.)

From the allegations of the complaint, it is not clear whether the Southlake defendants' actions of "deliberate indifference" occurred as part of their provision of medical services to Odumabo. It certainly appears possible that the Southlake defendants' actions were an exercise of their professional expertise, skill, or judgment and that Sowell's claim may boil down to a question of whether defendants applied the appropriate standard of care. However, as stated above, the Southlake defendants admit that the claims of deliberate actions in

Sowell's amended complaint "may not fall under the Medical Malpractice Act." (Southlake Defs.' Reply 8.)

More importantly, the Southlake defendants have not pointed out that Sowell has no evidence that they acted with deliberate indifference or that their actions were not taken as part of a provision of medical care to Odumabo. *See Celotex*, 477 U.S. at 325 ("the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case"). Accordingly, at this point, the Southlake defendants have not demonstrated "the absence of a genuine issue of material fact" as to whether they acted with deliberate indifference or whether their acts of deliberate indifference were part of their provision of medical care to Odumabo.

Thus, Sowell's claim for wrongful death is not barred by the Malpractice Act so long as she is stating a claim for deliberate indifference and not negligence. The Southlake defendants' motion for summary judgment on Sowell's Wrongful Death Act claim based on the Malpractice Act will be denied.

c.      *The Indiana Tort Claims Act*

The Lake County Jail defendants argue that Sowell's state law claims are barred for failure to comply with the notice provisions of the Indiana Tort Claims Act ("ITCA"). (Lake County Jail Defs.' Br. in Supp. of Mot. for Summ. J. 10.) Sowell counters that she was not required to give notice under the ITCA because

she alleged that defendants' violations were willful and wanton. (Pl.'s Resp. to Lake County Jail Defs.' Mot. for Summ. J. 5.) She clarifies that her state law claims against the Lake County Jail defendants are brought against them in their individual capacities, and that she is suing two of the defendants, Dominguez and Freeman, in their official capacities only for her Section 1983 claim. (Pl.'s Resp. to Lake County Jail Defs.' Mot. for Summ. J. 5.) The Lake County Jail defendants argue that the ITCA applies to public employees when their conduct, whether tortious or criminal, was done to further their employer's business. (Lake County Jail Defs.' Reply 10.) As both Sowell and the Lake County Jail defendants note, the ITCA does not apply to Section 1983 claims. *See Montgomery v. Vill. of Lake Station*, No. 2:02-cv-209, 2006 WL 2457238, at *11 (N.D. Ind. Aug. 22, 2006) (unpublished).

The ITCA provides that a "claim against a political subdivision is barred unless notice is filed with"either the governing body of the political subdivision or the Indiana political subdivision risk management commission within 180 days after the loss occurs. IND. CODE § 34-13-3-8 (2010). Failure to comply with the ITCA notice requirements is an affirmative defense that defendants must raise in their responsive pleadings. *Brown v. Alexander*, 876 N.E.2d 376, 383-84 (Ind. Ct. App. 2007). Once the defendant raises the defense, the burden shifts to the plaintiff to prove compliance. *Id.* The Lake County Jail defendants raised this

affirmative defense in their answer to the amended complaint. (DE # 29 at 17; DE # 30 at 12.)

Sowell does not argue that she complied with the ITCA notice requirements. Instead she argues that she was not required to comply with them. To start, the ITCA notice requirements also apply to suits against employees of a political subdivision. *Poole v. Clase*, 476 N.E.2d 828, 831-32 (Ind. 1985); *Leathem v. Laporte*, 2008 WL 4224940, at *6 (N.D. Ind. Sept. 10, 2008) (unpublished). Indiana courts have extended the ITCA's notice requirements to governmental employees reasoning that "a tort action against a governmental employee for actions taken within the scope of his or her employment may impose liability on the government employer. . .." *Wright v. Elston,* 701 N.E.2d 1227, 1233 (Ind. Ct. App. 1998). *Cf. Brown v. Alexander*, 876 N.E.2d at 380 ("Pursuant to the ITCA, 'governmental entities can be subjected to liability for tortious conduct . . ..'") (quoting O*shinski v. N. Ind. Commuter Transp. Dist.,* 843 N.E.2d 536, 543-44 (Ind. Ct. App. 2006)).

A plaintiff cannot avoid the notice requirements by simply suing a governmental employee in his or her individual capacity and the notice requirements are not triggered by the existence of governmental employment alone. *Schreiber v. Lawrence*, No. 1:02-CV-1319-DFH, 2003 WL 1562563, at *5 (S.D. Ind. Mar. 4, 2003) (unpublished). Instead, when a plaintiff sues a governmental employee in his or her individual capacity "notice is required only

if the act or omission causing the plaintiff's loss is within the scope of [the governmental employee's] employment." *Id.* (quoting *Van Valkenburg v. Warner*, 602 N.E.2d 1046, 1049 (Ind. Ct. App.1992)); *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000). Indiana courts have defined conduct within the scope of employment as "conduct . . . of the same general nature as that authorized, or incidental to the conduct authorized" by the employment. *See Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003) (quoting *Celebration Fireworks*, 727 N.E.2d at 453). Conduct is incidental to authorized conduct when it is "subordinate to or pertinent to an act which the servant is employed to perform," or when it is done "to an appreciable extent to further his employer's business." *Bushong*, 790 N.E.2d at 473 (internal quotations omitted).

In her claim for wrongful death, Sowell alleges that the violations of Odumabo's rights:

> were undertaken under the policy and practice of the Lake County Sheriff's Department. Specifically, the Department was the moving force behind the deliberate indifference to Jail detainees' physical health and safety, including the physical health and safety of Mr. Odumabo, by failing to adequately train, supervise, and control its employees and contractors in the proper evaluation and supervision of detainees.

(Pl.'s Am. Compl. ¶ 26.) Sowell also alleges that defendants' actions "were undertaken intentionally and with willful indifference to Mr. Odumabo's rights." (*Id.* at ¶ 27.) She further claims that the "actions and omissions described in this count, undertaken by the named defendants . . . were done in such a way that

their employers are liable for the actions and admission." (*Id.* at ¶ 21.) In her claim for indemnification Sowell alleges that the individual defendants "are or were employees or contractors of Lake County and Southlake Center for Mental Health, and acted willfully, wantonly, and within the scope of their employment in committing the acts and omissions described herein." (Pl.'s Am. Compl. ¶ 32.) She is also suing two of the defendants in their official capacity for the same conduct in her Section 1983 claim. (Pl.'s Resp. to Lake County Jail Defs.' Mot. for Summ. J. 5-6.)

In arguing that the ITCA notice requirements do not apply to her claims, Sowell stresses that she is suing the employees in their individual capacities and that she has alleged that they acted willfully and wantonly. (*Id.* at 5.) While a plaintiff can sue an employee individually if the employee acted willfully or wantonly, *see* IND. CODE § 34-13-3-5, as explained above, these type of allegations don't necessarily exempt the plaintiff from the notice requirement if the employee was acting within the scope of employment. Notice is required by the ITCA when an employee is acting within the scope of employment, and even willful or wanton conduct can fall within the scope of employment. *Bushing,* 790 N.E.2d at 470-71; *Kemezy v. Peters,* 622 N.E.2d 1296, 1298 (Ind. 1993) ("Even willful or wanton behavior does not necessarily remove one from the scope of his employment.").

However, allegations of willful and wanton conduct can suggest that the conduct may not have been within the scope of employment. *Smetzer v. Newton*, No.1:10-cv-93, 2010 WL 3219135, at *8 (N.D. Ind. Aug. 13, 2010) (stating that while allegations of willful or wanton conduct do not automatically mean that the conduct was outside of the scope of employment, they do "suggest . . . that the question may not be so black and white") (quoting *Burton v. Lacy*, No. 1:07-cv-918, 2008 WL 187552, at 83 (S.D. Ind. Jan. 18, 2008)). *Cf. Hebert v. Porter County*, No. 2:07-cv-091, 2007 WL 236835, at*4 (N.D. Ind. Aug. 14, 2007).

The Lake County Jail defendants argue that the conduct challenged in this action was the care of Odumabo and the operation of the jail and that this was the "business" of the jail. (Lake County Jail Defs.' Reply 10.) Therefore, defendants have pointed out that even if their conduct was willful or wanton, it was done in the scope of employment. Sowell has not pointed to any evidence that would show that the Lake County Jail defendants' conduct fell outside of the scope of employment. In fact, Sowell's own allegations that the actions "were taken under the policy and practice of the Lake County Sheriff's Department," as quoted above, indicate that the Lake County Jail defendants' actions of deliberate indifference were taken within the scope of employment. At the summary judgment stage, once the moving party has pointed out there is a lack of evidence to support the nonmoving party's case, "the nonmoving party may not

rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." *Estate of Thornton*, 48 F.Supp.2d at 842.

Sowell does not point to any specific facts supported by the evidence that show that the Lake County Jail defendants' conduct was outside the scope of employment. If Sowell needed additional discovery to obtain evidence that the conduct was willful and wanton and outside the scope of employment, she could have filed a motion pursuant to RULE 56(d) in order to obtain the needed discovery.

Accordingly, as to the argument that Sowell failed to give notice as required by the ITCA, the Lake County Jail defendants' summary judgment motion will be granted as to Sowell's Wrongful Death Act claim.

*e.    Indemnification*

Sowell pleads a claim for indemnification under INDIANA CODE § 34-13-4-1, Personal Civil Liability Under Civil Rights Laws of Employee Acting within Scope of Employment. (Pl.'s Am. Compl. ¶ 31.) The Southlake defendants and Lake County Jail defendants make various arguments as to why Sowell's claim for indemnification should fail. (Southlake Defs.' Br. in Supp. of Mot. for Summ. J. 10; Lake County Jail Defs.' Br. in Supp. of Mot. for Summ. J. 10.) However, neither group of defendants has hit upon the reason why Sowell's claim for indemnification cannot proceed at this point – they are not ripe for adjudication.

Indiana's indemnification statute provides that if a present or former employee is found liable for a "loss occurring because of a noncriminal act or omission within the scope of the public employee's employment which violates the civil rights laws of the United States, the governmental entity (when the governmental entity defends or has the opportunity to defend the public employee) shall" pay any judgment other than punitive damages. IND. CODE § 34-13-4-1 (2010).

No one has been found liable yet in this case and no judgment has been entered. This court only has subject matter over a case in which the controversy is ripe. A claim is not ripe if it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotations omitted). Accordingly, any claim for indemnity resulting from this suit is not ripe until the underlying liability has been established. *See Doe v. City of Chi.*, 360 F.3d 667, 672 (7th Cir. 2004) ("We have warned repeatedly against trying to resolve indemnity before liability."); *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) ("We regularly say that decisions about indemnity should be postponed until the underlying liability has been established."). At this point it is not clear that any of the Lake County Jail defendants will be held liable under Section 1983, that they acted within the scope of employment, or that they are all being defended by the

state. Therefore, Sowell's indemnification claims will be dismissed without prejudice for lack of subject matter jurisdiction.

  f.  *Claims against "Unknown Employees and Supervisors of the Lake County Jail"*

  The Lake County Jail defendants argue that the claims against the "Unknown Employees and Supervisors of the Lake County Jail" should be dismissed. (Lake County Jail Defs.' Br. in Supp. of Mot. for Summ. J. 11.) Sowell does not contest the dismissal of the "Unknown Employees and Supervisors of the Lake County Jail," but she reserves the right to seek the permission of the court to add any discovered defendants. (Pl.'s Resp. to Lake County Jail Defs.' Mot. for Summ. J. 6.) The "Unknown Employees and Supervisors of the Lake County Jail" will be dismissed from the case.

## IV. CONCLUSION

  The Lake County Jail defendants' motion to adopt by reference two of the Southlake defendants' summary judgment arguments (DE # 61 at 3-4) is **GRANTED.** The Southlake defendants' motion to strike (DE # 53) is **DENIED** as moot. Defendants "Unknown Employees and Supervisors of the Lake County Jail" are **DISMISSED** from the case. Sowell's claim for indemnification is **DISMISSED without prejudice** for lack of subject matter jurisdiction. Regarding the remaining claims, for the foregoing reasons, the Southlake defendants' motion for summary judgment on the claims of wrongful death and violation of

Section 1983 is **DENIED**. (DE # 46.) The Lake County Jail defendants' motion for summary judgment is **GRANTED** for the Wrongful Death Act claim and **DENIED** as to the Section 1983 claim. (DE # 61.) Thus, summary judgment as to Sowell's Wrongful Death Act claim is **GRANTED** in favor of Roy Dominguez, Bennie Freeman, Officer Janice Hatton, Officer Linda Riley, Sergeant R. Starkey, and Sergeant Hubner. The Wrongful Death Act claim survives as against defendants Southlake Center for Mental Health, Dr. Lee Periolat, and Manual Barragan. The Section 1983 claim survives as to all defendants remaining in the case.

**SO ORDERED.**

Date: January 26, 2011

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT