```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION
```

TAMARRA SOWELL, as personal          )
representative, administrator        )
for the Estate, and on behalf        )
of the heirs of ADEKUNLE ODUMABO,)
                                     )
         Plaintiff,                  )
                                     )
         v.                          )    CASE NO. 2:09 cv 47
                                     )
ROY DOMINGUEZ, individually and      )
in his official capacity as          )
Sheriff of Lake County, Indiana;     )
BENNIE FREEMAN, individually and     )
in his official capacity as          )
warden of Lake County Jail;          )
SOUTHLAKE CENTER FOR MENTAL          )
HEALTH Southlake Center employees)
DR. LEE PERIOLATE and MANUEL         )
BARRAGAN; Lake County Jail           )
employees OFFICER JANICE HATTON, )
OFFICER LINDA RILEY, SERGEANT R. )
STARKEY, and SERGEANT HUBNER; and)
UNKNOWN EMPLOYEES AND SUPERVISORS)
OF LAKE COUNTY JAIL; AND             )
SOUTHLAKE CENTER FOR MENTAL          )
HEALTH,                              )
                                     )
         Defendants                  )

## OPINION AND ORDER

This matter is before the court on the Motion to Compel Documents [14] filed by the plaintiff, Tamarra Sowell, on May 2, 2011. For the following reasons, the motion is **GRANTED**.

### Background

The plaintiff, Tamarra Sowell, brought this action against the Sheriff of Lake County, the Warden of Lake County Jail,

Southlake Center for Mental Health, and various employees and supervisors of the Lake County Jail and Southlake after Adekunle Odumabo hung himself on April 30, 2007, while an inmate at the Lake County Jail. Sowell brought suit under 42 U.S.C. §1983 for violations of Odumabo's constitutional rights; the Indiana Wrongful Death Statute, Ind. Code §34-23-1-1; and Indiana's Personal Civil Liability Under Civil Rights Laws of Employee Acting Within Scope of Employment, Ind. Code §34-13-4-1. Sowell alleges that Odumabo died because the Lake County Jail staff knew Odumabo should be monitored as a suicide risk but failed to have him under suicide watch.

Prior to his death, Odumabo was in the custody of the Lake County Jail. On April 26, 2007, Odumabo appeared before Magistrate Judge Paul R. Cherry in the United States District Court in Indiana. During the proceedings, Odumabo repeatedly told the judge that he wanted to die. Judge Cherry ordered the Lake County Jail to place Odumabo on suicide watch. The next day, employees of Southlake Mental Health evaluated Odumabo and began a step-down procedure to remove him from suicide watch. On April 30, 2007, Odumabo committed suicide.

Lake County is self-insured for liability claims though the Lake County Self-Insurance Fund, which is under the jurisdiction of the Lake County Commissioners. Lake County also contracted

2

with Southlake, a company providing mental health services at the jail, to indemnify, defend, and hold harmless Southlake, and its directors, officers, employees, agents, and independent contractors, for all claims arising out of care rendered at the jail by Southlake employees.

On May 1, 2007, the Lake County Commissioners' attorney, John Dull, retained Karas Adjusters, an insurance company, to assist in the investigation of Odumabo's suicide. In May 2007, Manuel Barragan, a Southlake employee who worked at the jail at the time of Odumabo's incarceration, gave a statement to Ann Watkins, an agent of Karas Adjusters, regarding the circumstances of Odumabo's death. Sowell learned about the investigation, but Barragan refused to disclose the statement, claiming it was privileged.

Sowell proceeded to file a motion to compel production of Barragan's statement. Barragan and Southlake objected, arguing that the statement was privileged under Indiana's insured-insurer privilege and was attorney work product. The court granted Sowell's motion, holding that the insured-insurer privilege was inapplicable in federal court, and even if the insured-insurer privilege applied to federal question suits, the privilege would not apply to this specific investigation because Karas Adjusters did not insure Barragan or any of the defendants. The court

3

further explained that the work-product privilege did not preclude disclosure because Barragan's statement was not taken by an attorney, was not taken at a time when there was an articulable claim, nor did his statement encompass attorney thought processes or mental conclusions.

Barragan complied with the court's order and produced the statement. Sowell then requested the remaining documents from the investigation. Barragan's counsel informed Sowell that they did not possess any other documents. Sowell then issued a subpoena to Karas Adjusters for its investigation file. Counsel for defendants Roy Dominguez and Bennie Freeman informed Sowell by letter that he objected to the subpoena, but Sowell received no communication from Karas Adjusters. Sowell did not speak with Karas Adjusters until February 1, 2011. During a phone conversation, Ted Karas informed Sowell that Karas Adjusters no longer possessed any of the documents from its Odumabo death investigation because the company had given all of the documents to the defendants' counsel.

Throughout the course of discovery, Sowell made many discovery requests, including one to produce all documents relating to Odumabo, but the defendants never disclosed the investigation documents. Sowell further claims that, despite her discovery requests, the defendants did not even reveal that an outside

company had conducted an investigation into Odumabo's death. The defendants disagree, claiming two defendants, Roy Dominguez and Bennie Freeman, referenced the Karas file in response to Sowell's discovery requests. The defendants represent that they did not turn over the file in response to Sowell's discovery requests in part because Ted Karas had the file and did not turn it over until one day before Sowell contacted Ted Karas to inquire about the file. Upon learning that Karas Adjusters did not have the file, Sowell's counsel wrote to defendants' counsel inquiring about the file. The defendants' counsel did not respond to Sowell's letter or subsequent e-mail. The defendants have yet to produce the investigation file.

## Discussion

A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things." Federal Rule of Civil Procedure 26(b)(1). For discovery purposes, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.,* 206 F.R.D. 615, 619 (S.D. Ind. 2002) (*quoting* *Oppenheimer Fund, Inc. v. Sanders,* 437

5

U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)). Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard. *Borom v. Town of Merrillville*, 2009 WL 1617085, *1 (N.D. Ind. June 8, 2009) (*citing* *Sanyo Laser Prods., Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 502 (S.D. Ind. 2003)). *See also* *Adams v. Target,* 2001 WL 987853, *1 (S.D. Ind. July 30, 2001)("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."); *Shapo v. Engle,* 2001 WL 629303, *2 (N.D. Ill. May 25, 2001)("Discovery is a search for the truth.").

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Federal Rule of Civil Procedure 37(a)(2)-(3). The burden "rests upon the objecting party to show why a particular discovery request is improper." *Gregg v. Local 305 IBEW*, 2009 WL 1325103, *8 (N.D. Ind. May 13, 2009)(*citing* *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006)); *McGrath v. Everest Nat. Ins. Co.*, 2009 WL 1325405, *3 (N.D. Ind. May 13, 2009)(internal citations omitted); *Carlson Restaurants Worldwide, Inc. v. Hammond Professional Cleaning Services*, 2009 WL 692224, *5 (N.D.

6

Ind. March 12, 2009)(internal citations omitted). The objecting party must show with specificity that the request is improper. *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009)(*citing* *Graham v. Casey's General Stores*, 206 F.R.D. 253, 254 (S.D. Ind. 2002)). That burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Cunningham*, 255 F.R.D. at 478 (*citing* *Burkybile v. Mitsubishi Motors Corp.*, 2006 WL 2325506, *6 (N.D. Ill. Aug. 2, 2006))(internal quotations and citations omitted). Rather, the court, under its broad discretion, considers "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Berning v. UAW Local 2209*, 242 F.R.D. 510, 512 (N.D. Ind. 2007)(examining *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002))(internal quotations and citations omitted).

The defendants first oppose Sowell's motion, arguing that she did not meet and confer as required by Rule 37(a)(1) and Local Rule 37.1(b). When a party files a discovery motion, he

must submit a certification explaining his good faith efforts to confer and resolve the discovery dispute without seeking court intervention. Rule 37(a)(1); Local Rule 37.1. The requirement to meet-and-confer must be taken seriously, because the court must find that the parties made a good faith effort to resolve the dispute before the court can rule on the merits of the motion. *See* **Robinson v. Potter**, 453 F.3d 990, 994-95 (8th Cir. 2006) (*citing* **Naviant Mktg. Solutions, Inc. v. Larry Tucker, Inc.**, 339 F.3d 180, 186 (3rd Cir. 2003). *See* **Shoppell v. Schrader**, 2009 WL 2515817, *1 (N.D. Ind. August 13, 2009) (finding good faith certification of a single letter and a brief telephone conversation inadequate). Courts have broad discretion in determining whether the moving party has satisfied the meet-and-confer component of Rule 37(a)(1) and Local Rule 37.1. **Mintel Intern Group, Ltd. v. Neerghen**, 2008 WL 4936745, *1 (N.D. Ill. Nov. 17, 2008). In making this determination, the court will consider the totality of the circumstances. **Kidwiler v. Progressive Paloverde Ins. Co.**, 192 F.R.D. 193 (N.D. W.Va. 2000). One correspondence can meet this requirement when it is detailed and continued contact likely would not have been successful in resolving the discovery dispute. **Kidwiler**, 192 F.R.D. at 198. *See also* **Alloc, Inc. v. Unilin Beheer B.V.**, 2006 WL 757871, *1 (E.D. Wis. March 24, 2006)

8

(finding that several letters exchanged between the two parties satisfied the meet and confer requirement of Rule 37).

In light of the ongoing struggle Sowell has encountered throughout discovery, her attempts to resolve the dispute appear to satisfy Rule 37 and Local Rule 37.1. After Sowell subpoenaed Karas Adjusters, the defendants' counsel suggested the parties meet and confer following a deposition scheduled on February 3, 2011, to resolve the discovery dispute. However, the deposition was moved to February 16, 2011. On February 4, 2011, Sowell proceeded to send the defendants' counsel a letter outlining her position and inviting them to respond. The defendants never responded. The parties did not have time to meet and confer following the February 16 deposition, and because she had not received a response to her letter, Sowell followed up with an e-mail. Again, the defendants did not respond. The defendants cannot now fault Sowell for her attempts to resolve the dispute when their own unwillingness to cooperate was the reason why the parties were unable to meet and confer. The defendants' vehement persistence on raising privileges the court already has determined are inapplicable indicates that further attempts to resolve the issue would have proven unsuccessful.

Turning to the merits of the dispute, Sowell requests production of all documents in the investigation file prepared by

Karas Adjusters. The record reflects that Dominguez and Freeman informed Sowell of Karas Adjusters' investigation in response to Sowell's document request. In their response, Dominguez and Freeman cited the attorney-client and work product privilege and continued to advocate that these privileges prevent disclosure.

As a general rule, evidentiary privileges are not favored, and where recognized, must be narrowly construed. *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981). The party claiming the privilege carries the burden of demonstrating that the document falls within the privilege. *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 152 F.R.D. 132, 137 (N.D. Ill. 1993).

The attorney-client privilege protects communications between a client and his lawyer. "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 683, 66 L.Ed.2d 584 (1981). The Seventh Circuit applies the privilege under the following principles:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclo-

> sure by himself or by the legal adviser, (8)
> except the protection be waived.
>
> ***United States v. White***, 950 F.2d 426, 430
> (7th Cir. 1991)

The party claiming the privilege bears the burden of establishing that all of the requirements for invoking the attorney-client privilege are met. "The claim of privilege cannot be a blanket claim; it must be made and sustained on a question-by-question or document-by-document basis." ***White***, 950 F.2d at 430 (*citing* ***United States v. Lawless***, 709 F.2d 485, 487 (7th Cir. 1983)) (internal quotation omitted).

As an initial matter, the defendants, who carry the burden of establishing that the requested communications are privileged, failed to demonstrate that the privilege applies to each document in the investigation file. In their response brief, the defendants made a blanket claim of privilege, arguing that the investigation file was protected by privilege in its entirety. Not only is the defendants' failure to apply the privilege on a document-by-document basis fatal to their claim, but upon review of the privilege log the defendants submitted, it is clear that the documents contained in the file are not protected by the attorney-client privilege.

In the privilege log, the defendants provided the name of the individual who sent correspondence or made a statement, the

recorder or recipient of the communication, and a brief description of the content of the documents.  Most of the documents listed do not appear to involve correspondence with an attorney or his staff.  For example, the file contains numerous newspaper articles, memos exchanged between Ted Karas and Midwest Insurance, and statements given by those with knowledge of the occurrence to agents of Karas Adjusters.  The defendants have not explained how any of these documents could come within the attorney-client privilege, particularly because they do not involve correspondence with an attorney.  Looking specifically at the communications where an attorney was the recipient, the only documents involve correspondence between Karas Adjusters and an attorney.  Karas Adjusters is not a party to this suit and does not have potential liability, and therefore, was not seeking legal advice through its correspondence.  Moreover, none of the descriptions of the documents as much as hint at the possibility that legal advice was sought.

In their response brief, the defendants acknowledged that the attorney-client privilege likely does not protect the documents in the traditional sense because the investigation was conducted by agents of Karas Adjusters, not attorneys.  The defendants ask the court to extend the attorney-client privilege to communications made by a party to its insurer for the purpose

of procuring legal representation.  The court previously has declined to extend the insured-insurer privilege to federal proceedings.  Despite rejecting the insured-insurer privilege, other courts have recognized a narrow exception and have extended the privilege to information shared with the insurer prior to the insurer acknowledging a duty to defend when the disclosure was made to expose potential liability in pursuit of legal representation by the insurer.  *Miller v. City of Plymouth*, 2011 WL 1740154, *7 (N.D. Ind. May 5, 2011).  In *Miller*, the court acknowledged this privilege, but noted that the insurance carrier's file was not broadly protected by the privilege.  The court directed the defendant to provide a privilege log showing that the documents pertained to the insurance carrier's potential liability or duty to defend.  The privilege extends only to disclosures made in pursuit of legal representation.  *Miller*, 2011 WL 1740154 at *7.

This limited exception is inapplicable because none of the parties were insured by Karas Adjusters.  For this narrow exception to apply, Karas Adjusters must have had potential liability or a duty to defend, and the defendants have not proven either.  Rather, the Lake County Jail, as a self-insured entity, remained liable for all potential claims and the cost of the defense.  By agreeing to hold Southlake harmless for all claims arising out of

13

care rendered at the Lake Country Jail by Southlake employees, Lake County Jail also was obligated to cover Southlake's costs, but nothing suggests that Karas Adjusters also assumed any part of the liability. Therefore, the attorney-client privilege does not extend to the documents contained in the investigation file. Because the attorney-client privilege does not apply in the traditional sense, the correspondence was not directed to an attorney, legal advice was not sought, and the limited extension of the privilege to communications made to an insurer in pursuit of obtaining legal representation is inapplicable, the attorney-client privilege does not prevent production of the documents contained in the investigation file.

The defendants also object to producing the investigation file on the grounds of work product privilege. "The work product privilege is distinct from and broader than, the attorney-client privilege." ***Broadnax v. ABF Freight Systems, Inc.***, 1998 WL 474099, *1 (N.D. Ill. 1998). The work product doctrine is codified in Rule 26(b)(3) as follows:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substan-

14

>     tial need for the materials to prepare its
>     case and cannot, without undue hardship,
>     obtain their substantial equivalent by other
>     means. . . .  If the court orders discovery
>     of those materials, it must protect against
>     disclosure of the mental impressions, conclu-
>     sions, opinions, or legal theories of a
>     party's attorney or other representative
>     concerning the litigation.
>
>     Rule 26(b)(3)(A)-(B)

See also **Boyer v. Gildea**, 257 F.R.D. 488, 490 (N.D. Ind. 2009) (applying the Rule).  To meet the qualified immunity from discovery based on Rule 26(b)(3), the materials sought must be: "(1) documents and tangible things; (2) prepared in anticipation of litigation or for trial; and (3) by or for a party or by or for a party's representative."  **Boyer**, 257 F.R.D. at 490 (*citing* Wright, Miller & Marcus, 8 *Federal Practice & Procedure* §2024 (3d ed.)).

The threshold determination is whether the documents sought to be protected were prepared in anticipation of litigation or for trial.  **Caremark, Inc. v. Affiliated Computer Services, Inc.**, 195 F.R.D. 610, 614 (N.D. Ill. 2000).  The test for each document is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  **Caremark, Inc.**, 195 F.R.D. at 614 (*citing* and *quoting* **Binks Mfg. Co. v. National Presto Indus., Inc.**, 709 F.2d

1109, 1118-19 (7th Cir. 1983)). Precedent is clear that eventual litigation does not ensure protection of all materials prepared by attorneys — the "remote prospect of future litigation" does not suffice to bring the work product doctrine into play. ***Binks Mfg. Co.***, 709 F.2d at 1120. Materials or investigative reports developed in the ordinary course of business do not qualify as work product. The material or report must have come into existence because of the litigation or because of an existing articulable claim likely to lead to litigation can the doctrine apply. ***Caremark, Inc.***, 195 F.R.D. at 614.

In the instant case, the materials sought meet just one of the work product doctrine requirements. The materials are documents and tangible things, but these materials neither were prepared in anticipation of litigation nor by the parties representing the defendants.

The defendants have not established that there was an articulable claim at the time the file was prepared. Although Odumabo's suicide may have been highly publicized, this alone does not prove that there were threats of litigation and that litigation likely would ensue. To fall within the privilege, there must be more than a possibility of future litigation. For example, in ***Logan v. Commercial Union Ins. Co.***, 96 F.3d 971, 977 (7th Cir. 1996), the defendants raised the work product privilege

to shield documents from discovery that were written after the plaintiff filed a claim with his workers' compensation insurance carrier, the claim was processed, investigated, and denied, and the plaintiff already had filed suit for benefits with the workers' compensation board. Because Logan had taken substantial steps toward litigation and the documents at issue concerned the defendant's defense strategy, the court determined that an articulable claim existed, sweeping the documents under the work product privilege. *Logan*, 96 F.3d at 977.

Karas Adjusters began its investigation of Odumabo's suicide within one month of his death although Sowell's claim was not filed until 22 months after Odumabo's suicide. The defendants argue that litigation was inevitable given the extent of publicity following the jail suicide. However, the defendants cannot point to any substantial steps, efforts, or specific threats of litigation that occurred prior to the commencement of Karas Adjusters' investigation. Although Karas Adjusters may have been hired to conduct the investigation based on the remote possibility of litigation, the record is devoid of any suggestion that Lake County hired Karas in response to the existence of an articulable claim. *Caremark, Inc.*, 195 F.R.D. at 614. *See also Binks Mfg. Co.*, 709 F.2d at 1120 (holding that the letters at issue were not protected as work product because they were part

of routine investigations and did not contain any threats of instituting litigation). The defendants cannot rely solely on the fact that they feared litigation may ensue from the publicized death without showing that a true threat of litigation existed at the time of the investigation.

Furthermore, the work product doctrine is limited to documents prepared by or for another party or its representative. Rule 26(b)(3)(A)-(B); **Boyer**, 257 F.R.D. at 490 (*citing* Wright, Miller & Marcus, 8 *Federal Practice & Procedure* §2024 (3d ed.)). Karas Adjusters is not representing any of the parties, does not have a duty to defend any of the parties, and none of the defendants retained Karas Adjusters to conduct the investigation on their behalf. Rather, the Lake County Commissioners, who are not a party to the suit, retained Karas Adjusters to investigate the Lake County Jail. The defendants have not demonstrated that the Commissioners retained Karas Adjusters to investigate on behalf of the Lake County Jail, but assuming they did, the Lake County Jail is not a party to the suit and does not represent any of the parties. Although the Lake County Jail agreed to defend and hold harmless Southlake and its employees, who are defendants, Lake County Jail does not itself represent the defendants, and the defendants have further failed to show that the investigation was conducted on behalf of them or their counsel. Given the defen-

dants' attenuated relationship to Karas Adjusters and their failure to demonstrate that the investigation was conducted on behalf of them or their counsel, the court finds that the defendants did not satisfy their burden to establish the applicability of the work product privilege.

————————

Because the defendants failed to show that the investigation file is subject to either the attorney-client or work product privilege, the Motion to Compel Documents [14] filed by the plaintiff, Tamarra Sowell, on May 2, 2011, is **GRANTED** and the defendants are **ORDERED** to produce the documents contained in the investigation file prepared by Karas Adjusters. The defendants are further **ORDERED** to pay Sowell's expenses and attorney's fees incurred in preparing this motion. See Rule 37(a)(5) ("If the motion is granted — or if the disclosure or requested discovery is provided after the motion was filed — the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."). Sowell is **DIRECTED** to file a fee affidavit within 14 days of this order.

19

ENTERED this 27th day of September, 2011

					s/ ANDREW P. RODOVICH
					   United States Magistrate Judge